Kenneth W. DAY et al., Plaintiffs,

v.

UNITED STATES of America et al.,
Defendants.

Civ. No. 65–1213.

United States District Court
S. D. California,
Central Division.

Sept. 13, 1965.

Bodle & Fogel, George E. Bodle, Daniel Fogel, Stephen Reinhardt, James Crawford, Los Angeles, Cal., Mulholl and, Hickey & Lyman, Edward J. Hickey, Jr., James L. Highsaw, Jr., Washington, D. C., for plaintiff.

Manuel L. Real, U. S. Atty. for Southern Dist. of California, by M. Morton Freilich, Asst. U. S. Atty., Los Angeles, Cal., for defendant United States.

Charles W. Burkett, Herbert A. Waterman, Randolph Karr, William R. Denton, San Francisco, Cal., for defendant Southern Pac. Co.

Robert W. Ginnane, Gen. Counsel, Leonard S. Goodman, Asst. Gen. Counsel, I. C. C., Washington, D. C., for defendant Interstate Commerce Commission.

Before BARNES, Circuit Judge, and CARR and CURTIS, District Judges.
PER CURIAM.

This is an action to enjoin and set aside an order of the Interstate Commerce Commission of September 23, 1964. The Railway Labor Executives' Association, hereinafter referred to as Association, contends that the order was entered without a hearing, in violation of its statutory and constitutional rights. The order in question approved the merger of the Southern Pacific Company, hereinafter referred to as S.P., with the Pacific Electric Railway Company, hereinafter referred to as P.E., the latter being a wholly owned subsidiary. The plaintiffs are employees of P.E. They claim that their jobs and job security will be threatened by the merger of the two companies.

Jurisdiction of this court is predicated upon Title 28, U.S.C.A., Sections 1336 and 2325. The latter section requires a three-judge court for an interlocutory or permanent injunction restraining the operation or execution in whole or in part of any order of the Interstate Commerce Commission.

On February 28, 1964, the S.P. and P.E. filed an application pursuant to Title 49, U.S.C.A., Sec. 5(2). An order of the Commission approved and authorized a merger of the properties and franchises of the P.E. into the S.P. for the ownership, management, and operation of the properties which were then separately owned. Both applicants are carriers by railroad subject to the Interstate Commerce Act.

On March 4, 1964, the executive secretary of the Association wrote to the Commission asserting that, if a merger application were granted, it might well have an adverse effect upon the employees of the applicant carriers and entered their protest in opposition to the merger application. On March 9, 1964, the Commission wrote to the secretary of the Association acknowledging receipt of his letter of March 4, 1964, and advising that no public protest had been filed against the merger and inquiring whether, in the event there should be no public opposition, the Association would be satisfied with the imposition of the so-called Oklahoma conditions for the protection of employees as a condition of any Commission order approving the merger.

On April 7, 1964, the secretary of the Association wrote the Commission advising that the Association would not be satisfied with the imposition of the so-called Oklahoma conditions in the event the proposed merger was approved. The letter also urged that the Commission schedule a hearing to receive evidence.

On April 13, 1964, counsel for the Association wrote the Commission requesting that the merger application be set for hearing. The letter asserted that the merger would not be consistent with public interest and that there was no evidence demonstrating that the merger would result in no harm to employees of the railroads. The Association also asserted that the "Oklahoma conditions" did not meet the minimum requirements of Section 5(2) (f). On April 22, 1964, the Commission acknowledged receipt of the above-mentioned letter and advised that the request of the Association was being considered.

On September 30, 1964, the Commission issued its report and order approving the merger. The Commission found "in view of the lack of any opposition to the merger by public agencies, shippers, or other carriers we find that a hearing is not necessary in the public interest." The Commission imposed the same conditions for protection of employees as was previously imposed in "Southern Ry. Co.—Control—Central of Georgia," supplemented by the Washington Job Protection Agreement. The citations to both are hereinafter set forth.

The Commission's order, served September 30, 1964, provided that the merger would become effective on November 4, 1964. On October 13, 1964, the Association filed a petition for reconsideration of the report. It was urged that the order was issued without a hearing and a request was made that the merger application be set down for hearing at the earliest practicable time. On November 2, 1964, the Commission stayed the effective date of the merger pending

disposition of the petition of the Association for reconsideration. On July 8, 1965, the Commission issued its order dated June 24, 1965, denying the petition for reconsideration. The order contained the following paragraph:

"*It is further ordered*, That the authorization granted herein will be subject to the same conditions for the protection of railway employees who may be adversely affected as were imposed in Southern Ry. Co.—Control—Central of Georgia Ry. Co., 317 I.C.C. 557, as supplemented and clarified in 317 I.C.C. 729 and 320 I.C.C. 377, including sections 4, 5, and 9 of the Washington Job Protection Agreement, see Atchison, T. & S. F. Ry. Co. Merger, 324 I.C.C. 254, 261 * * *."

The complaint herein alleges that the merger will result in reallocations of work and readjustment of work forces which will bring about loss of jobs for some of the employees and transfers for others to lesser-paying or less desirable jobs. It is contended that the Commission's finding that a hearing was not required on the merger application is not supported by substantial evidence and is arbitrary and capricious.

The purpose of the Interstate Commerce Act, Title 49, U.S.C.A., Secs. 5(2), et seq., was to permit two or more carriers to consolidate and merge their properties and franchises. Section 5(2) (b) provides that the Commission—

"* * * shall afford reasonable opportunity for interested parties to be heard."

In the next sentence, it is provided:

"If the Commission shall consider it necessary in order to determine whether the findings specified below may properly be made, it shall set said application for public hearing;

and a public hearing shall be held in all cases where carriers by railroad are involved unless the Commission determines that a public hearing is not necessary in the public interest."

In Section 5(2) (c), it is provided:

"* * * In passing upon any proposed transaction under the provisions of this paragraph, the Commission shall give weight to the following considerations, among others: * * * (4) the interest of the carrier employees affected."

Section 5(2) (f) provides that, as a condition of its approval in a transaction involving carriers, the Commission—

"* * * shall require a fair and equitable arrangement to protect the interests of the railroad employees affected. In its order of approval the Commission shall include terms and conditions providing that during the period of four years from the effective date of such order such transaction will not result in employees of the carrier or carriers by railroad affected by such order being in a worse position with respect to their employment, * * *."

■ The plaintiffs contend that they are entitled to a hearing with the opportunity to present testimony and to cross-examine witnesses. The commission resolved the matter by a finding that a hearing was not necessary in the public interest. The statute authorizes such a finding and we are precluded from setting aside such a finding if there is substantial evidence to support it.

Section 5(2) (b) provides that the Commission "shall afford reasonable opportunity for interested parties to be heard." Plaintiffs did not file protests as required by the rules [1] of the Commis-

---

1. Section 1.40(a) (49 C.F.R. § 1.40(a)) provides for the contents of a protest, and is as follows:

"(a) *Content.* A protest against the granting of any application shall set forth specifically the grounds upon which it is made and contain a concise statement of the interest of protestant in the proceeding."

sion but did correspond with the Commission. Plaintiffs' letters to the Commission contained general statements as follows: that the merger "might well have an adverse effect on the employees"; that jobs and job security will be threatened by the merger of the operations; that some 289 clerical employees "may be adversely affected"; that "the Oklahoma conditions do not meet the minimum requirements of Section 5(2) (f)."

■ There can be no doubt that plaintiffs are interested parties and that as employees they are protected under Section 5(2) (f). The Commission treated plaintiffs as interested parties and took steps to protect them. A public hearing was not granted to plaintiffs, but the Commission obviously did consider the matters set forth in the letters of plaintiffs. As a matter of fact, the Commission after reconsideration did add, among other things, sections of the Washington Job Protection Agreement to "Central of Georgia." [2]

It also appears from the proceedings before this court that the expertise of the Commission played an important part in the considerations underlying the issuance of the orders in question. The Commission had had considerable experience with mergers of this type.

Plaintiffs now assert in this court that they have been deprived of a constitutional right to a hearing before the Commission and that the Commission's findings were not supported by substantial evidence and were arbitrary and capricious. The findings were that no hearing was required and that the conditions imposed to protect employees met the requirements of Section 5(2) (f). The record before this court does not warrant

---

2. *EXCERPT FROM 317 I.C.C. 564:* In principal substance, the *New Orleans* conditions superimpose upon the *Oklahoma* conditions the provisions of the Washington Agreement, the protection afforded by the Oklahoma conditions *to be applied as a minimum.* The *Washington Agreement* affords benefits to employees for a maximum period of 5 years, depending upon the length of service, from the effective date of a coordination, but if an employee is displaced during the protective period he is entitled to an allowance equal to 60 percent, instead of 100 percent as under the Oklahoma conditions, of his average monthly compensation during the last 12 months of his employment. The New Orleans conditions were imposed for the specific purpose of giving protection to those employees who knowingly were not to be adversely affected in their employment until a substantial period elapsed after the date of the order authorizing the transaction and who otherwise would have received little or no protection under the Oklahoma conditions. (Italics supplied)
  *EXCERPT FROM 320 I.C.C. 377–378:* It was and is our intention that the protection afforded the affected employees is not limited to the protection set forth in appendix II, but that, as we stated in the first report, the protection afforded by the New Orleans conditions will be fair and equitable. 317 I.C.C. at 565–66. We thereby incorporated all the provisions of the New Orleans conditions, which em-

braced the provisions of the Washington Agreement, except as specifically modified in appendix II.
  It was our finding that employees adversely affected by the transaction in this proceeding were to be afforded the protection of all provisions of the Washington Agreement of May 21, 1936, which were not specifically modified by the provisions set forth in appendix II of our original report (317 I.C.C. at 588 et seq.).
  The Washington Agreement was negotiated by collective bargaining between the contracting parties and, except as we have specifically done so (as, for example, section 2 of article II of appendix II to our original report in this proceeding), we have not in this or any prior proceeding superseded in any way that Agreement as a private contract. It follows that after January 9, 1967, when the protection under the conditions of appendix II ends, the terms of the Washington Agreement, if applicable, shall continue, since the labor protective conditions which we have prescribed in this proceeding do not supersede the Washington Agreement as a private contract.
  The foregoing clarification of the labor protective conditions prescribed in our original report in this proceeding is equally applicable to subsequent orders issued under section 5 of the Interstate Commerce Act in which we have prescribed by reference the same labor protective conditions.

this court in upholding plaintiffs' contentions. When the allegations of the complaint are analyzed, they sum up to nothing more than general allegations of being deprived of a constitutional right to a hearing merely for the sake of a hearing, without specifying the particulars which made a hearing necessary.

The complaint here does not set out or specify how or in what way plaintiffs have been injured. This could have been easily done since the order of the Commission sets forth in detail the provisions which were made effective to protect employees. A reading of the Commission's order discloses that the protection provisions were most comprehensive, even to the point of providing for compensation for losses incurred in the sale of a home of an employee when that employee was transferred. It should also be noted that the Commission provided for compensation beyond the 4-year period required in the statute. Certainly plaintiffs cannot insist that the Act was intended to permit a "job freeze." As was pointed out by the Supreme Court in Brotherhood of Maintenance of Way Employes v. United States, 366 U.S. 169, at page 176, 81 S.Ct. 913, at page 916, 6 L.Ed.2d 206:

> " * * * the House conferees gave in explanation of the final version clearly reveal an understanding that compensation, not 'job freeze,' was contemplated."

Plaintiffs have not set forth facts showing any failure on the part of the Commission to comply with the requirements of Section 5(2) (f). That section requires that the merger shall not result in employees of the carrier or carriers "being in a worse position with respect to their employment." Certainly, if plaintiffs have been injured or placed in "a worse position" it could have been set forth in their complaint.

One who asserts that he has been deprived of a constitutional right or privilege is required to show that he has been injured before he has standing in court. (Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688.) As was pointed but by Mr. Chief Justice Hughes at page 324, 56 S.Ct. at page 472:

> "The judicial power does not extend to the determination of abstract questions."

As was pointed out by Mr. Justice Brandeis in a concurring opinion at page 347, 56 S.Ct. at page 483:

> "The Court will not pass upon the validity of a statute upon complaint of one who fails to show that he is injured by its operation."

See also State of Arizona v. State of California, 283 U.S. 423, 51 S.Ct. 522, 75 L.Ed. 1154.

A party is not entitled to challenge the constitutionality of an order unless he shows himself to be injured by its operation. In other words, unless he can show he has sustained, or is immediately in danger of, sustaining a direct injury as a result of that order, he is not entitled to invoke the judicial power. From the record before this court, it does not appear how or wherein plaintiffs will be damaged by the orders issued by the Commission; nor does the complaint set forth matters that warrant this court in annulling, setting aside, or declaring void the orders of the Commission or enjoining the enforcement thereof. In accordance with Rule 52(a) of the Federal Rules of Civil Procedure this opinion shall serve as findings of fact and conclusions of law.

Judgment will be entered accordingly.